Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

JUN 1 2 2000

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCIEN TROTMAN, et al., | CV 99-3839 ABC (CTx) |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, GENERAL TRUCK DRIVERS CHAUFFEURS, AND HELPERS UNION, LOCAL 692, | |
| Defendant. | |

ENTERED
CLERK, U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

Defendant General Truck Drivers, Chauffeurs and Helpers Union, Local No. 692, International Brotherhood of Teamsters, AFL CIO ("Local 692") filed a motion pursuant to Fed. R. Civ. P. 56 that was taken under submission by this Court on June 7, 2000. After reviewing the materials submitted by the parties and the case file, the Court GRANTS Defendant's Motion for Summary Judgment.

## I.   Procedural Background

On February 26, 1999, Plaintiffs Lucien Trotman, Robert Bush, Dennis Applegate, Phil Tannery, Roderick Birdzell, Michael Libby, and William Williams filed a Complaint in Los Angeles County Superior Court against Local 692 and Gerald Dunn. Defendants removed the case to

Docketed
Copies / NTC Sent
JS-5/JS-6
JS-2/JS-3
CLSD

this Court on April 9, 1999.  After removal, the parties stipulated to the dismissal without prejudice of Dunn.  Plaintiffs then filed a First Amended Complaint ("FAC") against Local 692 on January 24, 2000. The FAC asserts three claims:  Breach of contract, negligence, and breach of the duty of fair representation.[1]

On February 18, 2000, Local 692 filed the instant motion for summary judgment.  Plaintiffs oppose.

## II.  Summary Judgment Standard of Review

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978).  If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  This means that, if the moving party has the burden of proof at trial, that party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [that party's] favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

---

[1]  Plaintiffs also assert a fourth claim for a permanent injunction.  That claim, however, is a request for a remedy based on the alleged wrongful conduct that forms the basis for the first three claims.  Because the first three claims are deficient, the fourth claim is necessarily deficient.

1  back to [his or her] former terminal and exercise seniority based on

2  the date of hire at the [former] terminal." (Dunn Decl. Ex 1 at 28.)

3  Thus, even if Dunn's statements were only his personal opinions, those

4  personal opinions correlated directly with the NMA.  Thus, no

5  reasonable jury could find that failing to state that his statements

6  were his opinions would constitute a "reckless disregard for the

7  rights of the individual employee[s]."  *See Robesky*, 573 F.2d at 1090.

8       The crux of the problem is that Dunn (like Allied) failed to

9  predict that the NJSSC would conclude that a transfer of business to

10 Allied's competitor was not a terminal closure for purposes of Article

11 5, § 7(b)(1).  Although the results are quite unfortunate, a union's

12 duty of fair representation does not require its representative to

13 correctly figure out *all* the possible future consequences of a

14 member's action and disclose those consequences to the member.

15      Accordingly, the Court finds that Plaintiffs' third claim must

16 fail.

17                          **V.   Conclusion**

18      For the reasons articulated herein, the Court GRANTS summary

19 judgment in favor of Defendant Local 692 as to all claims asserted by

20 Plaintiffs.

21

22      **SO ORDERED.**

23 **DATED:**        June 12, 2000

24

25                                    _____
                                      Audrey B Collin
26                                    **AUDREY B. COLLINS**
                                      **UNITED STATES DISTRICT JUDGE**

27

28

                                    11

1   If the opponent has the burden of proof at trial, then the moving
2   party has no burden to negate the opponent's claim. *Celotex Corp. v.*
3   *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). In other words,
4   the moving party does not have the burden to produce *any* evidence
5   showing the absence of a genuine issue of material fact. *Id.* at 325.
6   "Instead, . . . the burden on the moving party may be discharged by
7   'showing'--that is, pointing out to the district court--that there is
8   an absence of evidence to support the nonmoving party's case." *Id.*

9   Once the moving party satisfies this initial burden, "an adverse
10  party may not rest upon the mere allegations or denials of the adverse
11  party's pleadings . . . [T]he adverse party's response . . . *must set*
12  *forth specific facts* showing that there is a genuine issue for trial."
13  Fed. R. Civ. P. 56(e) (emphasis added). A "genuine issue" of material
14  fact exists only when the nonmoving party makes a sufficient showing
15  to establish the essential elements to that party's case, and on which
16  that party would bear the burden of proof at trial. *Celotex*, 477 U.S.
17  at 322-23. "The mere existence of a scintilla of evidence in support
18  of the plaintiff's position will be insufficient; there must be
19  evidence on which a reasonable jury could reasonably find for
20  plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106
21  S. Ct. 2505 (1986). The evidence of the nonmovant is to be believed,
22  and all justifiable inferences are to be drawn in favor of the
23  nonmovant. *Id.* at 248. However, the court must view the evidence
24  presented to establish these elements "through the prism of the
25  substantive evidentiary burden." *Id.* at 252.

26
27
28

3

### III.  Factual Background[2]

Allied Systems, Inc.[3] employs Plaintiffs.  (Def.'s Stmnt. of Uncont. Facts ("Facts") ¶ 1.)  Plaintiffs have also been members of Local 692 since at least 1990.  Local 692 and Allied were parties to a collective bargaining agreement that included the National Master Automobile Transporters Agreement ("NMA").  (Facts ¶ 2.)  This agreement has governed the terms and conditions of Plaintiffs' employment with Allied.  (Id.)

The NMA contains provisions that govern seniority and the treatment of seniority when employers open or close terminals or transfer, increase, or lose work.  (Facts ¶ 3.)  The NMA creates various arbitration committees to resolve disputes arising under the NMA.  (Id.)  The NMA provides that all seniority issues and grievances are to be referred to the Standing Seniority Committee.  (Id. at ¶ 4.)

In August 1995, Local 692 received written notice that Allied intended to domicile three drivers at its San Diego facility to handle Volkswagen traffic that had been rerouted from Long Beach.  (Facts ¶ 6.)  Allied posted a bid at the Long Beach terminal on the same day to obtain these three drivers.  (Id.)

A few days after Allied posted the bid, Local 692 had a "yard meeting."  At the meeting, Dunn, Local 692's president, told the members that if any member transferred to the San Diego facility and

---

[2]  As required for purposes of a summary judgment motion, this section views the evidence in the light most favorable to the non-movant Plaintiffs.  The Court notes, however, that there does not appear to be any dispute as to the underlying facts.  Instead, the issue is the legal consequence of these facts.

[3]  Allied was formerly Commercial Carriers, Inc.  For simplicity, the Court will refer to this company as Allied throughout this order.

1   is tolled until the employee learns of the arbitrator's decision.
2   *Kozy v. Wings West Airlines, Inc.*, 89 F.3d 635, 640 (9th Cir. 1996);
3   *Galindo*, 793 F.2d at 1510-11.

4          Here, Plaintiffs learned about the allegedly wrongful conduct in
5   April 1998 when Allied filed a Request for Change of Operations with
6   the NJSSC.  (Issues ¶ 7.)  However, because the NJSSC could have made
7   the Plaintiffs whole, the limitations period was tolled until the
8   NJSSC issued its decision and Plaintiffs received notice of that
9   decision.  Defendants do not present any evidence of those dates.

10          Moreover, Plaintiffs sought to have the NJSSC reconsider its
11   decision and were involved in that process from August 12, 1998 until
12   November 2, 1998.  (*See* Facts ¶¶ 20-21).  During that period of time,
13   and maybe longer,[5] the limitations period was tolled.  Plaintiffs
14   filed a complaint on February 26, 1999.

15          Because February 26, 1999 is within six months of November 2,
16   1998, the Court cannot determine whether the limitations period was
17   exceeded without knowing the period of time between the initial NJSSC
18   decision and Plaintiffs' request for reconsideration.  Accordingly,
19   the Court finds that a genuine issue of fact exists as to whether the
20   limitations period had expired at the time that Plaintiffs filed the
21   FAC.

22          **2.   *Plaintiffs' claim is deficient.***

23          "A union breaches its duty [of fair representation] when its
24   conduct is 'arbitrary, discriminatory, or in bad faith.'"
25   *International Brotherhood of Elect. Workers v. Foust*, 442 U.S. 42, 47,

26

27   _____

          [5]  Defendants present no evidence as to when Plaintiffs learned
28   of the November 2, 1998 decision.

1  the facility closed within three years of the member's transfer, the

2  member could then transfer back to the Long Beach facility and regain

3  his or her Long Beach seniority.   (Pls.' Stmnt of Genuine Issues

4  ("Issues") ¶ 1.)   Dunn "said this statement was based on Article 5,

5  Section 7(b)(1) of the collective bargaining agreement."   (*Id.*)   Dunn,

6  however, did not tell the members that the Standing Seniority

7  Committee would have to approve any decision concerning seniority.

8  (*Id.* at ¶ 2.)

9      Dunn also had a separate meeting with Trotman, Bush, and

10  Applegate about the San Diego transfer.   (Issues ¶ 3; Facts ¶ 10.)

11  Dunn reiterated his position that, based on Article 5, § 7(b)(1) of

12  the NMA, these Plaintiffs could regain their seniority if the San

13  Diego facility closed down within three years of their respective

14  transfers.   Dunn also did not mention the role of the Standing

15  Seniority Committee at this meeting.   (Issues ¶ 4.)

16      Based on Dunn's assurances and representations, Trotman, Bush,

17  and Applegate decided to transfer to the San Diego facility.   (Issues

18  ¶ 6.)   In October 1995, Allied issued a notice domiciling these three

19  Plaintiffs in San Diego.   Allied's action effectively created a San

20  Diego seniority list that was independent of, and separate from, the

21  Long Beach seniority list.   (Facts ¶ 14.)   Apparently, the remaining

22  four Plaintiffs transferred to the San Diego facility in late 1996.[4]

23  These Plaintiffs also transferred to San Diego because of Dunn's

24  _____

25      [4]   Three of these Plaintfs, Birdzell, Libby, and Williams,
provide declarations supporting this fact.   One Plaintiff, Tannery,

26  provides no declaration in opposition to the summary judgment motion.
Because Defendant does not challenge Plaintiffs' statement that

27  Tannery transferred to San Diego and did so based on Dunn's
representations, the Court assumes the accuracy of those statements in

28  connection with Tannery.

representations.  (Issues ¶ 6.)  After Plaintiffs transferred to San Diego, they were no longer members of Local 692 because San Diego is within the jurisdiction of Local 542.  (Dunn Decl. ¶¶ 11-13.)

In 1998, Allied lost the San Diego Volkswagen business to another company, Hadley Auto Transport.  (Facts ¶ 17.)  Local 692, Local 542, and Allied agreed that this loss of business fell within the provisions of Article 5, § 7(b)(1) of the NMA.  (*Id.*)  "On April 21, 1998, Allied filed a Request for Change of Operation incorporating this agreement" with the National Joint Standing Senior Committee ("NJSSC").  (*Id.*)  The NJSSC found that the loss of business was a transfer of business that did not fall within Article 5, § 7(b)(1). (*Id.* at ¶ 18.)  It, therefore, rejected the agreement reached by Allied and the unions.  (*Id.*)

Each Plaintiff asked the NJSSC to reconsider its decision. (Issues ¶ 8.)  The NJSSC ordered the Plaintiffs to file a new case to address their contentions.  (Dun Decl. Ex. 12.)  On November 2, 1998, the NJSSC reaffirmed its original decision.  (Facts ¶ 21.)

## IV.  Analysis

**A.  Plaintiffs' Claim for Breach of Contract is Preempted.**

Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), preempts "any state claim based on a collective bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement."  *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (citation omitted).  Moreover, a union member can assert a breach of the collective bargaining agreement claim against the union only if the member is "able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the

1 union by the individual employees." *United Steelworkers of America v.*
2 *Rawson*, 495 U.S. 362, 374, 110 S. Ct. 1904 (1990).

3 Any claim for the breach of the NMA is precluded because
4 Plaintiffs do not point to any language in the NMA that allows them to
5 sue Local 692. Plaintiffs, however, contend that their breach of
6 contract claim does not rely on the NMA.

7 In fact, Plaintiffs allege that "Local 692 . . . breached *an*
8 *agreement* with Plaintiffs when they [Local 692 representatives] failed
9 to provide them [Plaintiffs] with correct information concerning the
10 terms and conditions of the [NMA]." (FAC ¶ 13 (emphasis added).)
11 Furthermore, in their opposition, Plaintiffs argue that "[t]hey are
12 suing for a breach of the *oral or implied contract* between [Local 692]
13 and its members." (Pls.' Opp. at 7:14-15.) However, Plaintiffs
14 assert that this contract arises from Local 692's relationship to its
15 members:

16 As a union, [Local 692] has certain obligations and duties that
it owes to its members to represent their best interests. . . .
17 One of the duties of [Local 692] is to explain to the members
what the [NMA] means. . . . If [the union] provides wrong
18 information or no information then the union has breached its
obligations to its members. That is what happened in this case.
19
20 (*Id.* at 7:15-20.) Such a claim, however, is not a claim for breach of
21 contract but a claim for the breach of the union's duty of fair
22 representation. *See Rawson*, 495 U.S. at 372 (stating that the union's
23 duty of fair representation consists of "a statutory obligation to
24 serve the interests of all members without hostility or discrimination
25 toward any, and to exercise its discretion with complete good faith
26 and honesty, and to avoid arbitrary conduct"). Properly construed as
27 a claim for the breach of the duty of fair representation, however,
the claim also fails. *See* § IV.C., *infra*.
28

7

**B.   Plaintiffs' Claim for Negligence is Deficient.**

Plaintiffs' negligence claim is based on the same conduct as the breach of contract claim.  (*See* Pls.' Opp. at 8; FAC ¶ 16.) Plaintiffs argue that "the duty of care [applicable here] did not arise from the [NMA]." (Pls.' Opp. at 8:10.)  The duty "arose from the natural relationship between a union and its members." (*Id.* at 8:10-11.)  As with the Plaintiffs' purported breach of contract claim, this claim is also merely a claim for a breach of the duty of fair representation. *See Rawson*, 495 U.S. at 372.  However, "mere negligence, even in the enforcement of a collective-bargaining agreement, [does] not state a claim for breach of the duty of fair representation." *Id.* at 372-73.  Thus, the Court finds that Plaintiffs' negligence claim is deficient.

**C.   Plaintiffs' Duty of Fair Representation Claim.**

**1.   *Defendant has failed to show that the claim is time-barred.***

Local 692 asserts that Plaintiffs' unfair representation claim is time-barred.  However, a genuine issue of fact exists as to whether the limitations period had expired when Plaintiffs filed the complaint.

"[I]n a duty of fair representation case, the six-month [limitations] period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986). Additionally, "[a] fair representation claim not based on how a grievance is presented to an arbitrator is tolled while good faith attempts are made to resolve that claim through grievance procedures." *Id.* at 1510.  Moreover, because the grievance procedure "could make the employee whole despite the union's errors," the limitations period

8

1  99 S. Ct. 2121 (1979) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.
2  Ct. 903 (1967)). "'Arbitrary' conduct is not limited to intentional
3  conduct." *Robesky v. Qantas Empire Airways Ltd.*, 573 F.2d 1082, 1089
4  (9th Cir. 1978). Thus, "it is clear that unintentional acts or
5  omissions by union officials may be arbitrary if they reflect reckless
6  disregard for the rights of the individual employee . . . ; they
7  severely prejudice the injured employee . . . ; and the policies
8  underlying the duty of fair representation would not be served by
9  shielding the union from liability in the circumstances of the
10 particular case." *Id.* at 1090 (citations omitted); *accord Marquez v.*
11 *Screen Actors Guild*, 124 F.3d 1034, 1043 (9th Cir. 1997). Finally, a
12 union representative's errors in interpreting the provisions of the
13 collective-bargaining agreement are insufficient to establish a breach
14 of the duty of fair representation. *Dutrisac v. Caterpillar Tractor*
15 *Co.*, 749 F.2d 1270, 1273 (9th Cir. 1983).

16     Plaintiffs assert that Dunn breached the union's duty of fair
17 representation by failing to inform Plaintiffs about the role of the
18 Senior Standing Committee. (*See* Pls.' Opp. at 11.) No reasonable
19 jury could find that this "omission" constitutes a "reckless disregard
20 for the rights of the individual employee[s]." *Robesky*, 573 F.2d at
21 1090.

22     Plaintiffs also assert that Dunn's failure to inform Plaintiffs
23 that his statement about regaining seniority was solely his opinion
24 also breached the union's duty of fair representation. (Pls.' Opp. at
25 10.) However, Plaintiffs concede that Dunn informed them that his
26 statements were based on Article 5, § 7(b)(1) of the NMA. That
27 section states that when a terminal is closed, a member that
28 transferred in within three years "shall have the right to transfer

10